IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 8, 2005

## STATE OF TENNESSEE v. STEPHEN ANTHONY SCOTT

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 40200176     Michael R. Jones, Judge**

---

**No. 2004-00927-CCA-R3-CD - Filed June 7, 2005**

---

The defendant, Stephen Anthony Scott, appeals as of right from his convictions by jury of aggravated robbery, attempted aggravated robbery, especially aggravated kidnapping, two counts of aggravated kidnapping, kidnapping, and attempted robbery. Following a sentencing hearing, the defendant was classified as a Range I offender and received a ten-year sentence at 30% for aggravated robbery, a four-year sentence at 30% for attempted aggravated robbery, a twenty-four year sentence at 100% for especially aggravated kidnapping, a ten-year sentence at 100% for both counts of aggravated kidnapping, a four-year sentence at 30% for kidnapping, and a four-year sentence at 30% for attempted robbery. In this appeal, the defendant argues: (1) the evidence is insufficient to support his convictions; and (2) the trial court erred in sentencing. We determine that two of the defendant's convictions should be merged and remand for entry of corrected judgments. In addition, we remand for a new sentencing hearing on the defendant's conviction for aggravated kidnapping. In all other respects, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part,**
**Reversed in Part, and Case Remanded in Part**

J.C. MCLIN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and NORMA MCGEE OGLE, JJ., joined.

Roger E. Nell, District Public Defender (on appeal), and Russel A. Church, Assistant Public Defender (at trial), for the appellant, Stephen Anthony Scott.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; John W. Carney, Jr., District Attorney General; and C. Daniel Brollier, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Facts and Procedural History

On the evening of December 15, 2001, Laurie Goodman and Jason McClain were visiting at the home of Jay and Mary Hutchison. At about 11:00 p.m., Goodman and McClain left the residence. On his way to take Goodman home, McClain stopped to pick up the defendant to pursue a marijuana transaction.

The defendant directed McClain to drive to an apartment complex where the marijuana was supposedly located. Upon arrival, the defendant exited the vehicle and proceeded into the complex to retrieve the marijuana. However, he returned with a gun and demanded money from both Goodman and McClain. Since the couple could only produce less than ten dollars, the defendant became agitated and slapped McClain in the ear with the gun. The defendant then forced McClain to drive him to get additional money.

Unsure of a solution, McClain phoned the Hutchisons and drove back to their home. Jay Hutchison walked outside his home to meet McClain. With McClain at gunpoint, the defendant then demanded money from Jay Hutchison. However, Hutchison made it back inside his home and told his wife to phone the police.

The defendant then drove away with Goodman and McClain inside the car. Briefly thereafter, the defendant slammed on the brakes, demanded the watch and necklace of McClain, and ran off, leaving the couple sitting in the car.

Goodman and McClain returned to the Hutchisons' residence at roughly the same time the police arrived. Hesitant to reveal their involvement in the underlying marijuana transaction, Goodman and McClain told police that they did not know the defendant and were just giving him a ride.

At trial, these facts were reflected in the testimonies of Goodman, McClain, and the Hutchisons. However, the cross-examination of Goodman and McClain brought out some inconsistencies. According to McClain, Goodman made an informed decision to accompany him and the defendant to retrieve the drugs. McClain also stated that the defendant first produced the gun while inside the vehicle. According to Goodman, she was unaware that she was accompanying McClain in a drug transaction and believed that the defendant first showed the gun outside the vehicle. In addition, the defense attempted to impeach the testimonies of Goodman and McClain by arguing that their initial statements to police were false. According to Detective Ty Burdine of the Clarksville Police Department, the victims initially stated that they met the defendant at an Amoco, where they stopped to use the restroom.

McClain responded, "I didn't want to admit that [a marijuana sale] was what was going on because I was afraid of being in trouble." Goodman testified that she did not come forward with the truth earlier because "McClain was all worried about previous things he had done and I didn't know what to do. I was scared."

The defendant testified that he was the one selling the drugs for McClain and that McClain was seeking his money on the evening of December 15, 2001. The defendant denied ever having a gun or going to the Hutchison residence that night.

At the conclusion of the evidence, the jury convicted the defendant of (count one) aggravated robbery; (count two) attempted aggravated robbery; (count three) especially aggravated kidnapping; (counts four and five) aggravated kidnapping; (count six) kidnapping; and (count seven) attempted robbery.

At the sentencing hearing, the State called Goodman and Megan Solomon to testify. Goodman testified that the emotional impact of the crime affects her every day and that she has received counseling as a result. Solomon's testimony related to a similar prior incident involving the defendant for which he had not yet been convicted. The trial court stated:

> The Court listened to the testimony of that young lady and, frankly, is unable to determine what happened other than [the defendant] again possessed a weapon.
> . . . .
> I don't know at all what happened . . . . So, I'm not going to consider that testimony as far as sentencing is concerned either as mitigation or as enhancement.

The trial court applied one enhancement factor to all counts: the defendant was adjudicated to have committed a delinquent act as a juvenile that would constitute a felony if committed by an adult. As to count seven, the trial court found that the following enhancement factors also applied: (1) the defendant possessed or employed a firearm during the commission of the offense; (2) the defendant had no hesitation about committing the crime when the risk to human life was high; and (3) the crime was committed under circumstances under which the potential for bodily injury to a victim was great. The trial court stated:

> The marijuana use [admitted by the defendant in the presentence report] is criminal behavior. His testimony to selling would be criminal behavior. Frankly, it would have next to no weight with my determinations. So, I'm not going to find that number two applies.
> . . . .
> The proof to me was very clear that [the defendant] did, in fact, possess a firearm when he was attempting to rob Mr. Hutchinson [sic]; however, I believe the proof was that Mr. Hutchinson [sic] may not have - - it may not have ever been pointed at Mr. Hutchinson [sic]; however, [the defendant] did, in fact, have it in his possession. So, as to count seven that is an enhancement.
> [The next enhancement factor submitted was that] the defendant had no hesitation about committing a crime when the risk to human life was high.
> Aggravated robbery, attempted aggravated robbery, especially aggravated kidnapping all, in fact, have a very high risk to human life. This Defendant had no

hesitation about doing this crime, or these crimes; however, I believe that that is part of the offense itself as to those counts.

It would apply to count seven on Mr. Hutchinson [sic]. As to the way it was committed even though it was found guilty by the jury of being attempted robbery.

[The next enhancement factor] the State alleges applies: That the crime was committed under circumstances under which the potential for bodily injury to a victim was great.

Again, the Court believes that counts one through six, that all is part of the offense. Count seven, which is the attempted robbery of Mr. Hutchinson [sic], the Court would find that that would apply as to how this crime was committed, because he did, in fact, possess a weapon. So, redundant of number ten. So, ten and 17 really would go together.

. . . On [the enhancement factor regarding] the juvenile conviction for aggravated robbery, aggravated assault and aggravated kidnapping, whether this would be one offense of aggravated robbery.

. . . I don't know when [the defendant] would have been released from the custody of the State of Tennessee or Department of Children Services; however, it could not have been very long before he committed this offense. . . .

So, [this enhancement factor] does, in fact, apply, because he did commit and was found guilty of committing a delinquent act, which constituted a very, very serious felony.

When sentencing the defendant, the trial court applied one mitigating factor: "under the kidnapping statute, [it] says that releasing alive is a mitigating factor for the Court to consider." The trial court applied this mitigating factor only to count three, the especially aggravated kidnapping of McClain.

The trial court then classified the defendant as a Range I offender and sentenced him to a ten-year sentence at 30% for the aggravated robbery of McClain, count one; a four-year sentence at 30% for the attempted aggravated robbery of Goodman, count two; a twenty-four year sentence at 100% for the especially aggravated kidnapping of McClain, count three; a ten-year sentence at 100% for the aggravated kidnapping of Goodman, count four; a ten-year sentence at 100% for the aggravated kidnapping of McClain, count five; a four-year sentence at 30% for the kidnapping of Goodman, count six; and a four-year sentence at 30% for the attempted robbery of Jay Hutchison, count seven.

The trial court ordered the defendant to serve count four, the aggravated kidnapping of Goodman, consecutive to count three, the especially aggravated kidnapping of McClain. The trial court also ordered count seven, the attempted robbery of Jay Hutchison, to run consecutively to count four. In justifying consecutive sentencing, the trial court stated:

[W]e look at the presentence report that, basically, just says I've never worked; then this is, basically, a robbery, get money type deal; the only source of livelihood that the Court has seen is from criminal activities.

The other criteria within number one is that he has knowingly devoted such defendant's life to criminal acts. He, certainly, from age 17 or thereabouts has.

. . . .

If we consider the aggravated robbery as a juvenile [the defendant] has a criminal record in a short period of time that is extensive.

. . . .

[T]he circumstances surrounding the commission of this offense are especially aggravated. Not just aggravated but especially aggravated.

The prior commitment to the Department of Children Services and then the almost immediate, within a year this activity occurred shows to me that confinement for an extended period of time is necessary to protect society.

This Defendant has absolutely no willingness to lead a productive life, and the only thing that he has been able to do is to resort to criminal activity, and continues to do so.

. . . .

The potential for death or serious bodily injury was very extreme in this situation. As I stated, [the defendant] did, in fact, hit Mr. McClain with the weapon, holding the weapon right at his head as Ms. Goodman was right there in the front seat.

So, I do believe that there is ample proof to find that this Defendant is a dangerous offender; his behavior indicated absolutely no regard for . . . human life; and apparently, this was an idea that was not hatched on the spot but drawn out by [the defendant].

The trial court ordered counts one and two to run concurrently with count three.[1] Rather than merging count five into count three and count six into count four, the trial court entered judgment forms showing concurrent sentences. The trial court stated:

For sentencing purposes counts three and five will merge. In reference to the especially aggravated kidnapping of Mr. McClain. So, that those sentences, I believe, by law would be required to be concurrent. And, likewise in counts four and count six, the aggravated kidnapping in count four and the kidnapping in count six of Ms. Goodman.

After the denial of his motion for new trial, the defendant filed notice of this appeal.

## II. Analysis

### Sufficiency of the Evidence

---

[1] This finding is based upon the transcript of the sentencing hearing. Copies of the judgment forms for counts one and two are not included in the technical record.

The defendant contends that the evidence is insufficient to support the jury's verdict. When the sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt."). Questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Once a jury finds the defendant guilty, the presumption of innocence with which a defendant is initially cloaked is replaced with one of guilt, "so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). In contrast, the State, as the prevailing party, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from it on appeal. State v. Davidson, 121 S.W.3d 600, 614 (Tenn. 2003). The Tennessee Supreme Court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966).

In this appeal, the defendant does not challenge the quantity of proof presented or the proof in relation to any elements of the crimes. Rather, he argues that the State's case centers upon the testimony of witnesses who admittedly lied to authorities regarding the facts and whose testimonies are so divergent that no rational trier of fact could have accredited them. However, this Court will not reweigh the evidence or re-evaluate the credibility of the witnesses. Making these determinations would essentially engineer a new trial. Assigning weight to the factual discrepancies in the evidence is the function of the trier of fact. Obviously by their verdict, the jury found the testimonies of the State's witnesses credible and discounted any inconsistencies. The trier of fact was in the better position to assess the witnesses' credibility at trial and the defendant's guilt. Therefore, this issue is without merit.

**Sentencing**

The remainder of the defendant's argument on appeal challenges the trial court's sentencing determinations. The defendant argues that consecutive sentencing is improper and that the trial court failed to merge lesser-included offenses. The defendant has also filed a supplemental brief, asking

this Court to consider the impact of <u>Blakely v. Washington</u>, 542 U.S. - - - -, 124 S. Ct. 2531 (2004), in regard to his sentences.

Generally, when a defendant challenges the length, range, or manner of a sentence, this Court employs a *de novo* standard of review with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the principles of the 1989 Sentencing Act, this Court may not disturb the sentence even if a different result is preferred. <u>State v. Fletcher</u>, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). The Sentencing Commission Comments to section 40-35-401 provide that the burden on appeal is on the defendant to show that the sentence is improper.

The record in the instant case reflects that the trial court considered the sentencing principles and the relevant underlying facts. Thus, our review is *de novo* accompanied by the presumption of correctness. In conducting our *de novo* review, this Court considers: (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made in his own behalf, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; <u>see</u> <u>Ashby</u>, 823 S.W.2d at 168; <u>State v. Moss</u>, 727 S.W.2d 229, 236-37 (Tenn. 1986).

## A. Consecutive Sentencing

The defendant's initial challenge is to the trial court's imposition of consecutive sentencing. Tennessee Code Annotated section 40-35-115 states that a trial court may order consecutive sentencing if it finds by a preponderance of the evidence that the defendant is a professional criminal, has an extensive criminal record, is a dangerous mentally abnormal person, is a dangerous offender whose behavior indicates little or no regard for human life, is convicted of two or more statutory offenses involving sexual abuse of a minor, is sentenced while on probation for a separate offense, or is sentenced for criminal contempt. Tennessee Rule of Criminal Procedure 32(c)(1) requires that the trial court "specifically recite the reasons" for its imposition of consecutive sentencing.

In the instant case, the trial court concluded that the defendant had devoted his life to criminal activities, that criminal activities were his only source of livelihood, and that the defendant was a dangerous offender. We find the record insufficient to support the conclusion that the defendant devoted his life to criminal activity and that criminal activity was his only source of livelihood. At the time these crimes were committed, the defendant was approximately eighteen years old. No proof was presented that the defendant had any criminal history as an adult, any significant assets, or an income without legitimate employment to substantiate that income. <u>Cf.</u> <u>State v. Desirey</u>, 909

S.W.2d 20 (Tenn. Crim. App. 1995) (affirming consecutive sentencing upon a showing that the defendant made $200,000 per week with no legitimate employment). Therefore, we conclude that the record is insufficient to support consecutive sentencing based upon findings that the defendant devoted his life to criminal activity as his only source of livelihood.

The only applicable factor that supports the imposition of consecutive sentences in this case is Tennessee Code Annotated section 40-35-115(b)(4), that "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." For dangerous offenders, "consecutive sentences cannot be imposed unless the terms reasonably relate to the severity of the offenses committed and are necessary in order to protect the public from further serious criminal conduct by the defendant." State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995). In the instant case, the trial court considered the severity of the crimes and concluded that "commitment for an extended period of time is necessary to protect society." The trial court found that the commission of these crimes was not "hatched on the spot" but was drawn out by the defendant and that the defendant accrued an extensive criminal history in a very short period of time. In addition, the court considered the presentence report which indicated that the defendant had previously been adjudicated as a juvenile for similar offenses and prior rehabilitative efforts had been unsuccessful. Affording the trial court the presumption of correctness and based upon the foregoing, we affirm the trial court's imposition of consecutive sentencing based upon the fact that the defendant was a dangerous offender.

## B. Merger

The defendant next argues that the trial court sentenced him for two lesser-included offenses that should have been merged. The defendant was sentenced for both the especially aggravated kidnapping of McClain, count three, and the aggravated kidnapping of McClain, count five. The trial court properly noted that "[f]or sentencing purposes counts three and five will merge." However, the judgment forms do not reflect the merger, but rather reflect separate sentences for each count and that count five is to run concurrent with count three. The trial court should have merged the lesser-included aggravated kidnapping offense into especially aggravated kidnapping. "Merger avoids a double jeopardy problem while protecting the jury's findings." State v. Timmy Reagan, No. M2002-01472-CCA-R3-CD, 2004 WL 1114588, at *20 (Tenn. Crim. App., at Nashville, May 19, 2004). "[N]either two sentences nor separate judgments of conviction should [be] entered, and the one judgment of conviction should reflect the merger." Id.

Similarly, the trial court ordered the sentence for kidnapping Goodman, count six, to run concurrently with the sentence for her aggravated kidnapping, count four. These two counts should have been merged.

Accordingly, we conclude that the sentences for counts five and six should be vacated as they are lesser-included offenses that must be merged into counts three and four.

## C. Sentence Enhancement and Mitigation

-8-

The remainder of the defendant's argument on appeal challenges the trial court's application of enhancement factors and failure to find sentence mitigation. Engulfed in the defendant's argument is the assertion that, in light of Blakely, the trial court violated his Sixth amendment right to trial by jury by applying enhancement factors not admitted or found by a jury.

Our 1989 Sentencing Act provides that, procedurally, the trial court is to increase a sentence within a given proscribed range based upon the existence of certain enhancement factors and then reduce the sentence as appropriate for any mitigating factors. See Tenn. Code Ann. § 40-35-210(d), (e). The weight to be afforded an existing factor is left to the discretion of the trial court so long as it complies with the purposes and principles of the 1989 Sentencing Act and the trial court's findings are adequately supported by the record. See Tenn. Code Ann. § 40-35-210, Sentencing Comm'n Cmts.; Moss, 727 S.W.2d at 238; see also Ashby, 823 S.W.2d at 169.

The record indicates that the trial court applied enhancement factor (21), that the defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult, to all counts. See Tenn. Code Ann. § 40-35-114(21). As to count seven, the trial court applied enhancement factor (10), the defendant employed a firearm; (17), the crime was committed under circumstances under which the potential for bodily injury was great; and (11), that the defendant had no hesitation about committing a crime when the risk to human life was high. Id. at § 40-35-114(10), (17), and (11). Based upon the presentence report, the record as a whole, and the nature of the offenses in this case, we conclude that the trial court's application of these enhancement factors was adequately supported by the record.

The defendant's argues that Blakely mandates the modification of his sentences. The State argues that the defendant has waived any Blakely issues for failure to present the argument at trial or in his motion for new trial. We agree. In the recent decision State v. Gomez, - - - S.W.3d - - - -, No. M2002-01209-SC-R11-CD (Tenn. April 15, 2005), the Tennessee Supreme Court announced that Tennessee's sentencing structure does not violate the Sixth Amendment. Id. at - - - -. The court also determined that Blakely did not establish a new rule of law. Id. at - - - -. As such, the defendant, who has failed to assert this issue prior to appeal, has effectively waived the issue. Furthermore, the Gomez court concluded that a Tennessee trial judge's discretionary application of sentence enhancement factors absent an admission or jury finding does not amount to plain error. Id. at - - - -. In accordance with this reasoning, we determine the defendant's Blakely argument to be without merit.

When sentencing the defendant, the trial court applied one mitigating factor: "under the kidnapping statute, [it] says that releasing alive is a mitigating factor for the Court to consider." Tennessee Code Annotated section 39-13-305(b)(2) states, "If the offender voluntarily releases the victim alive or voluntarily provides information leading to the victim's safe release, such actions shall be considered by the court as a mitigating factor at the time of sentencing." The trial court applied this mitigating factor only to count three, the especially aggravated kidnapping of McClain. However, Tennessee Code Annotated section 39-13-304(b)(2) affords this same mitigating factor

to aggravated kidnapping. Therefore, we remand count four, the aggravated kidnapping of Goodman, for resentencing to account for this mitigating factor.

### III. Conclusion

Based upon the foregoing and the record, we determine the evidence sufficient to affirm the judgments of convictions and the record sufficient to support the defendant's sentences. However, we conclude that count five must merge into count three and that count six must merge into count four. Accordingly, we remand for entry of corrected judgments. In addition, we remand count four for a new sentencing hearing to account for a mitigating factor absent from the trial court's initial finding.

_____
J.C. McLIN, JUDGE